Good morning, may it please the Court, Matthew Righetti representing Mr. Jones and Mr. Johnson. This case arrives in this Court following a Graves of Summary Judgment in favor of the case where the allegations are, and the evidence is that there were violations of two sections of the TCPA committed by a group called All-American Auto Boards, I don't think there's any dispute about that fact. The question about this appeal is whether those TCPA violations that were committed in robocalling and calling people on that NASRO Do Not Call registry can be extended to this defendant, Royal, which is under agency principles. So the lower court, and there's three issues I think on this appeal, the lower court found first that there was no allegation of agency, and that was a surprise to us. We didn't have oral argument in this case. It was a surprise to us because the defense did not raise that in their summary judgment papers. We bring it up to this Court because the agency allegations are alleged in paragraphs 10 and 35 of the First Amendment complaint. The Court doesn't make an analysis of the First Amendment complaint. I don't know what the Court was looking at. We just don't know. It is explicitly laid out in paragraphs 10 and 35 of the First Amendment complaint. If we get passing agency allegations that in fact allegations remain of agency in the complaint against Royal, the next question I believe is whether there is sufficient evidence under the summary judgment standards to have a disputed issue with that about whether Royal could be responsible under vicarious agency rules under the TCPA. And there's a strong public policy because TCPA is remedial legislation, as we know, and courts have said, and quoting the Malika v. American Eagle Outfitters case, allowing the seller to avoid potential liability by outsourcing his telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions, limiting liability to the telemarketer that physically places the call, in this case the AADP, would make enforcement in many cases substantially more expensive and less efficient since consumers or law enforcement agencies would be required to sue each telemarketer separately in order to obtain effective relief. The Birchmire case versus King Craving Cruise Lines is an example of a well-heeled entity that wants to sell a product or service, stands next to the impudious defendant who makes the calls, and then when the defendant that makes the calls walks away, the person who authorized them to make the calls gets obfuscated for remedial legislation of the TCPA. Well, sir, let me ask you a question. Yes, sir. In addition to the agency decision or agency issue, is it fair for me, under my inserted law, to apply the factors that are intended factors that are enumerated under the secondary statement? I believe so, because the agency liability comes from the telephone. Yes, there might be agency liability under the DCPA, which I think there's sufficient case law to get there. Then do I apply the ten factors that the statement considers on a summary judgment? I think you can, and I think the two most important ones are right to control and actual control. I understand. I can tell you where you're going to go from here. So then I can do the factors. It's my understanding that Royal provided AAP with contracts to sell, that Royal provided them with framing to aid in the sale of those contracts. They required AAP to comply with certain guidelines and scripts when selling those contracts. What else did Royal do? Well, you have the terms of the contract, which relate to AAP. That's what I have, contracts to sell. And they have the terms of the contract, but I have to refer that to the contract. It seems to me that this is all Royal has provided to AAP. Well, the terms of the contract are related out in bullet point format in our opening brief of A to Z through 10, all the items. All I'm trying to do is get down to the specific here. Yeah. Because it's also true, is it not, that AAP telemarketers make sales for numerous companies? They do, but they're all made as, so let me get back to you. All offering the same product. Let me get back to your first question, because in addition you have a, pardon me, in addition you have Royal appointing Clayton Churchill as the district manager over AAP to, in Royal's own words, babysit the account. I understand. I mean, I've got all of that, but what worries me is, and I'm just trying to make sure I get it, I don't think that AAP telemarketers only make sales for Royal. They make them for numerous companies. And at that point, Royal, I'm supposed to determine if Royal controls the manner and means of the calls for the general sales pitch. So, for instance, let me give you an instance. If, in fact, I call my travel agent and say I want to travel from Pocatello to San Francisco, and my travel agent picks the company I'm going to buy the ticket from, the time I'm going to do the ticket for, and says it's United, hold in Pocatello, because we only have Delta. So let's say it was United. Then at that point, you're saying the travel agent, based on what you've got here, is somehow the agent of United. Now, my worry is that in this particular instance, what AAP does is not controlled by Royal. What customer it sells, what product, is not controlled by Royal. But once determining how to sell Royal's product, then there may be some control. So this is what we understand. Well, I want to make sure that that's right. This is what we understand from the evidences in the record, and this comes from Clayton Churchill, who's Royal's district manager in charge of the AAP account. They make a robocall with the computer to Mr. Watson and Mr. Jones. When the call is answered by Mr. Jones or Mr. Watson, it gets then, the computer routes it to a screen where all the vehicle service contract vendors that AAP has a contract with populate on that screen. Two, three, four. We know it's more than one. But the calls to Clayton Churchill were all made on behalf of Royal and on behalf of the other vehicle service contract providers that AAP has a contract with. And the person in the telemarketing bullpen answers the call. It's populated with all these vendors that they do business with. And it will start selling the vehicle service contract for one or more of those vendors. They ask questions of the person who answers the call. They find out what kind of car they have. Well, here it is. And they determine which vehicle service contract that's an agency customer. And they say, well, it's V to C from Royal. In a perfect world, or maybe they find out which one has the highest margin, and they sell them that one. I don't know. Whatever. Now, you answered a couple of questions. I wanted to make sure. You're alleged to be an international authority here. Yes, I will. Actual agency.  Right. Okay. Non-appearance. Correct. All right. Secondly, you want us to find at Royal an act that's an agency. Okay. That they were not an independent contractor. Correct? If there's the speed of facts, over that. Yes. Okay. All right. Let me ask you this. If we determine in and under my circle, could an independent contractor be an agent? Well, if you make a finding that it's an independent contractor, that's a good question. And I think in light of, I would say, and I don't have authority for this, but I would say in light of remedial legislation of the TCPA and the ability of an independent contractor and the contractor to assess their, you know, who's responsible for what, I would say yes, under the TCPA. In some other instances, perhaps not. Tim, what do you think? Regardless of the title from where there's value categorized, if you still have to go back to the ability to control, it would be the level of control that would be determinative for vicarious liability. Would it be the right to control or actual control? Right. Okay. All right. And our position is there's the speed of facts. I don't think there's any speed of facts or right to control. I think there's speed of facts in the record about actual control. If you just look at, for instance, the McCabe Declaration supporting the motion, and page 23 of the record, paragraph 8, or the Pomeroy Declaration supporting the motion, and the record, page 41, paragraphs 6 and 7, those go through in some detailed relationship between Royal and AAAP and the training and the appointment of Churchill and the babysitting of the account. And, in fact, as Pomeroy says at that one point, they suspended AAAP for violations and then reinstated them later on. So, in the end, you had control. In the end, actually, you said you controlled everything. I'm interested in his questions because I was trying to determine, in this situation, whether there was agency based on the 10 factors, and I was kind of trying to make sure I had all the facts down. I'm still having a tough time understanding how, based on the facts, you've elipsed them, that then Royal becomes the agent. If you can't get there, it has to be because I think that you find there's no right to control under the contract, or the right to control is that the test stone is actual control and there's no actual control under the contract, I would think. But I think there's dispute effects on both. What is the nature of the violation of the central app? Was it who they called? Was it when they called? So, in instance of points, first, they called a cell phone using an auto dialer with a pre-recorded place, a computer place. That is a violation of the TCPA. Cell phone? Calling a cell phone? Calling cell phones using an automated telephone dialing system in a robotic place. That is a violation of the TCPA. Secondly, both of these cell phones at the time were registered on the National Do Not Call Registry, and that's the second violation of the TCPA. Okay, so let me make sure I understand. So, Royal is selling these, the business is selling these cards. Right. And they sold them to the company that is the defendant. The company is still even calling as a contract with them. And they made these robocalls. And the question, and they make a robocall to a call that they should have made a robocall to. And so the question becomes, is the defendant controlling the, who the company is calling? What's the? The right to control the particular calls. What's the, what's the nature of the relationship between Royal and, do you mean to give me like a. I understand, but I'm going to do it at the level of generality when I'm trying to get a little bit more specific. Okay, so to get that specific, does, does Royal need to approve each call, each phone number that AAP dials? And again, you have your 10,000 phone numbers at a time every minute. So. They don't need to approve. Well, they, by training, they have, they do all these things. They know what they're supposed to say, and they give them the contracts. And it's how much? It's how much. They know what they have to say and provide training as to what to say in our contract. You're suggesting is enough to show at least a question of fact as to control. And referee sharing. We have a whole list of contracts that the defendant has resolved. And the referee sharing. In addition to sharing, I know some besides you want to do it. Well, I don't want to over-rely on something that's that unimportant. You know, so, you know, I think, you know, it raises the Taco Bell case. The Taco Bell case involved Taco Bell, the corporation, and a franchisee who was selling at Taco Bell restaurants. And the franchisee went ahead, it was really briefly, and did telemarketing. Well, that's different because, and the court said, well, we're not going to talk about the corporation responsible for that because it's a franchisee that's supposed to be selling tacos and quesadillas, and they did telemarketing. We're not going to hold the major corporation responsible. Here it's different. This case is a case where they were, where the AAP was appointed to telemarket, and that was her only job, telemarket, on behalf of the royalty, and that is exactly what they did. That's what I think distorts this case from the cases that say, well, you know, it may be a bit too intenuated to say that Taco Bell Corporation is responsible for the telemarketing of its franchisee, because this case, AAP had no other reason for its existence other than to telemarket. We had no other reason to telemarket vehicle service contributors. I think we have your argument. And I think the service contributors were supposed to be interested. But if you get time, you might get hungry. Good morning. Good day to you. This is the court. My name is Richard Ruiz. I'm a counsel for the AAP and the Royal Administration Services in this matter. I'd like to start with the basic premise, and that is that not all contractors necessarily give rise to agency relationships, nor are all agency relationships necessarily provided by the contractors. And the casual case that we've said has no reference to that point. I would like to address Judge Ruiz's question, where he has inclined circuit if an independent contractor, independent and independent contractor, being agent, and automatically. And my response to that is not generally, unless the principle manifests a right to control over that agent. And my point is that is not what we have here. We have a very detailed contract that helps deny that. But that contract speaks to training issues, promotion issues, warranty matters, and customer service issues. But nowhere do you see control for the manner and the means of the QB that was conducted as Judge Spitzens did. And if I didn't talk about it, there was actual control on who does the actual controlling thing. But who is called, when they are called, who does the calling, the circumstances of the calls, and there's a truth on that here. Well, I think Judge Fischer's question is very important because that's kind of where I was leading with my questions. It seems to me one can easily suggest this is an independent contractor, then whether there's control deals with the ten factors in the restatement, even when an independent contractor is natural. That would be true. I want to speak for a moment about the public policy concerns that counsel brings. You certainly don't want to have a situation where a contractor can simply create an agreement with another party and then hold their dirty work for them and make calls which violate the law and then turn them back on Hawaii. But that is not this situation. This is not a birch wire situation, as my opponents have imagined. This is a case where the contract in three separate instances required all Americans to execute. The country was specifically said that they will not violate the CCPA. We have a lawyer, Mr. Churchill, that's evidence of who's having control over the manner and the means of the calls. But I look at it differently. Mr. Churchill was on-site strictly by training as to the product in question. But when you have Mr. Churchill's presence on-site, when you have Mr. McCain, the president of the company, making 12 trips to all American in a three-year period, where you have the contractor that deflects that on-site on these two occasions where my client got wind of the fact that the alleged CCPA violation was going on, they suspended the agreement. My general counsel then has negated and only resumed the agreement once they determined there were no violations. So this is something that my client was quite mindful of the fact that there was potential for a CCPA liability here. And he did the same thing, all American, and in conducting the contract and in managing the contract, went to ending that sort of thing. So the policy concern about simply contracting with another party and walking away, that's not missed because my client was mindful of that and took steps to try to prevent that problem. I would also talk about the nature of violations in question. We're speaking in order to honor calls and do not call registry calls. Those are both functions of who is being called, how they will be called, and under what circumstances. And while the agreement, which being royal and all-American, is in the document, and I'm not going to deny that, it's got a lot of conditions in it, what it doesn't have is any obligation to control those items, who will be called, how they will be called, and under what circumstances. Because effectively, Your Honor, that is what you're purchasing. You contract with a telemarketer. You're basically such a leech generation. And so that is exactly what we purchased here. The standard that the telemarketer is marketing effectively. I am going to point to something that's considered vicarious liability. They are saying that simply by virtue of having an agreement with the telemarketer, by virtue of that alone, that should confer liability. And we don't believe that's accurate. Because in that instance, if their standard is the correct one, it's simply by virtue of having a connection with a telemarketer, you create liability. To take it to a telemetrical extreme, that would mean that every entity that had any contact with all-American could theoretically be truly and certainly liable for every single call that all-American makes. And I'm going to take a moment and speak to the manner in which the calls were made. I'm sorry. The question that you raised, the question you potentially put out there for liability for every call made, I guess it's further confused in this case. What are we resolving here? A dismissal on a motion to dismiss? Or a grant of a separate judgment motion? Because there are different facts to point into. Certainly, this is a grant of separate judgment. This is a grant of separate judgment. So instead of all those facts, then develop them. Well, we believe that the incumbent can handle opportunities to develop them. Although, if they put up their facts, if they fill up those submissions, first of all, it's a separate judgment. We put up our motion. We populated it correctly with our facts. So we believe there isn't anything more to know. We know what there is to know about the nature of the relationship between oil and all-Americans. And all they can argue, and if we're at this stage, our argument that they have argued is there may be some disputes over those material facts. And the law of agency is unclear as it applies to these facts. And they should have an opportunity to go forward. Is that essentially what you're saying? That's essentially the argument. But I would take issue with the correctness of that position because I believe the title bill is instructive. In this matter, because it indicates it wasn't simply franchisee-franchisee work. Another distinction to be had. The company that was involved in it proved a unique program. They paid for the program. I mean, there was money changing hands for this program, yet the court concluded that there was no control over manner in which this program was held. Doesn't the record also indicate here, and I should be asking Mr. Brighetti this question, but doesn't the record show that they never even attempted to sell Royal's product, either Watson or Jones? There's no evidence that's there. In fact, any of the calls that are in question involve the sale of a Royal product. Although, the Royal product could have been sold. Well, look at that. Look, let me address that in two ways. One is there was mention to a diamond in the car protection plan. But the law client has been taking in its various products. All American was unauthorized to sell them. So that's the first piece. But secondly, we believe the goods are the first question. But that's not the first question. I apologize. My question was, even though that wasn't being sold, it could have been somebody's goods. Thank you, Your Honor. Our position is you cannot take them. It is too strict to say that somebody, by having a contract with all American invites, maybe can be exposed to liability. With that in sort of view, though, when a call is made, and this was discussed earlier, a caller is asked for questions about the price model, make of the vehicle that they have, and questions regarding what type of insurance they're looking for. And only when you go through that decision tree does the computer screen populate with potential insurance contracts that advance the area. So our position is that only once you go through that decision tree, even if you're on the screen and the computer's not proofread, but if you go through the decision tree, you make those questions, you're going to pop out as a potential product to be sold. That's an argument. And if we were going into the fifth factor of the ten factors, whether it's the employees, supplies, tools, systems, mentalities, and the place of work, really here, it seems to say AP provides all of those and provides, if I'm understanding correctly, even the computer program, which would suggest which product ought to be sold. That's absolutely correct, Joe. Yes, I'm sure so. So there's the liability control, but I think the agency standard, in the sweetest manner, is a good balance between strict liability and letting the contracting parties, which are the three guys belonging to the facts of the ground. And so we believe the facts of the ground suggest that while there was a lot of control over certain subjects related to the nature of the product being sold, there was no control over the manner and the means. I would take a moment to just briefly go through the cases that we believe are important to consider. The district court below looked at the case of Smith where State Farm was sued. They distinguished this matter from Smith. I think Smith's is so good because in that case you had State Farm through its agents that was actually mentioning the name of State Farm alongside a caller, and you had very good involvement by State Farm in every step of the way. And to the point that customers understood when they received the call, it wasn't just the teleworker that was calling. They were calling on behalf of both State Farm. And in the end, the judge law-advised it. It's the same excuse from there. We also believe that the Dockin case is distinguishable from this matter, and as the judge highlighted in his opinion below, there's similar reasons because there's simply a lack of control that was present in the Dockin matter. I also want to take a moment to reference Mr. Churchill. Mr. Churchill was simply my client's left-side monitor to ensure that the contract was being sold correctly, simply that they were selling the product that he gave them to sell, and if they did it correctly, then I was trading them on what we were selling. But, again, that sell at the edge when it came to who was doing who's calling, the manner in which they were called, the number of times they were called, and who could avoid it. The All-Americans Company was actually doing the calling. We had control of who got on those vendors. On Mr. Churchill's business website, I think, he was the only agency so far looking at problem control here. And the deal with it is we are obviously not conceding liability, but this energy, the TCPA does contemplate that there's an affirmative defense where if a party implements the do-care policies and procedures to effectively prevent TCPA violations, that that is an affirmative defense to liability. And so we believe that that fits nicely with what we did here. We believe we anticipated the potential of the TCPA violations. We defended All-American as best we could. We had the hope that it would take on three occasions that it would apply by the TCPA. And then we went so far as to suspend the agreement on those two occasions. And we believe, indeed, that we had a violation of the calling procedure because after the violation was investigated, then the violations were approved. Okay, that's an accurate statement. But the other side, Mr. Righetti, would be arguing, well, even though they did all that, as a matter of fact, they got a third party to do their marketing for it, as did other companies, okay? And I'm not saying that you colluded in any fashion in your industry, but other companies also went to AAP. What, again, Mr. Righetti is saying is you shouldn't be able to avoid vicarious liability under agency law just by getting someone else on it in some way in-house. I mean, I would agree, except that the case as dictated, Thomas v. Taco Bell, and then Senator Jason's dictation, you have to look at the facts on the ground. You have to look at the level of control that was asserted here. I mean, for principles of agency, all this was observed, and it all comes down to the control that seems to be asserted. And so in this case, the nature of the control is asserted for other folks who would have to violate a statute in order to enter the product. What failing could you make that seems like you could put another hat on you? What misstep could have you taken and then could have given enough level of control that we would find that AAP was your agent? If Royal's name was mentioned in the initial call, like, hi, I'm calling on behalf of Royal Administration Services, or if the website for All American populated with Royal's name, but there are instances in other cases where the courts do find liability, where there's no distinguishing factor in the mind of the consumer as between the caller and the person they're calling on behalf of. In this case, there's quite a bit of difference between those two. What do you think, sir? Okay. We'll support that. Are there further questions on that? No? No further questions. Thank you very much. I appreciate it. Thank you. If you stall your time, I'll give you a minute. I'm going to thank you very much. I think that I would just like to point out that the inferences that were drawn, and I think there can be different inferences drawn from the evidence that was presented to the District Court of Amherst that were drawn, were drawn in favor of the moving party, which is contrary to the circuit general rules. I think what the defense is arguing here is a situation where if we set it up correctly and push all this over onto the table of the telemarketer, we can let them do our dirty business for us, and we can walk away from this scot-free, and that's what the Smith v. Steenhart case says cannot happen, because Royal and these people that are getting their products sold aren't, in fact, in the best position to monitor and make sure that these telemarketers are doing what they're supposed to do. I know that's not a lot. That's all I have. Thank you very much. Thank you. We'll move on to that one. Case 1517328, Jones and Watson v. Royal.
judges: Fisher, Schroeder, N.R. Smith